**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 5, 2010
Decided November 15, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-2287

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:09CR00188-001 |
| DAVID METZGER, *Defendant-Appellant.* | Larry J. McKinney, *Judge.* |

**O R D E R**

David Metzger was 54 years old when he pleaded guilty to 15 counts of producing child pornography involving 7 children, *see* 18 U.S.C. § 2251(a), and 1 count of possessing 1 million images of child pornography or erotica, *see id.* § 2252(a)(4)(B). The district court calculated a total offense level of 47 and a recommended guideline range of life. The judge sentenced him to a whopping 2,820 months' imprisonment (235 years) and a lifetime of supervised release. He appeals, arguing that his sentence is substantively unreasonable. Although the sentence is long, Metzger's conduct was abhorrent and the sentence is within both the statutory maximum and the guideline range. We affirm.

# I. BACKGROUND

Metzger, a 54-year-old Navy veteran, was convicted of producing and possessing child pornography he made of the children of his relatives and friends. The factual basis for Metzger's plea set out his crimes: In 2008, he convinced relatives and their friends to let him babysit their 8-11 year-old daughters. After 7 girls told police that Metzger videotaped and molested them, police executed a search warrant and uncovered several computers that contained over 1 million images of child pornography and child erotica, and 14 sexually explicit videos of the child victims. When officers interviewed Metzger, he admitted that he had touched at least three girls 8 to 11 years in age, videotaped and photographed the young girls using vibrators, and encouraged the girls to engage in sexual contact with each other and him. Metzger stipulated that in one of his homemade videos he offered a girl money if he could "lick her," and in another, he offered the girls $15 to strip.

Metzger further admitted that he had collected child pornography for years and that some of the children depicted were as young as six years old. He stated he had been photographing young girls in swimsuits since 2003, but first took pornographic pictures of children in 2008. His sexual interest in children, he explained, began in 1980 when his Navy service brought him to the Philippines; while there, he had sex with 18-year-old women.

The presentence investigation report ("PSR") calculated Metzger's final offense level off the chart at 47, resulting in a guideline range of life. But, the probation officer continued, the 15 production counts carried statutory terms of imprisonment of not less than 15 nor more than 30 years for each count, *see* 18 U.S.C. § 2251(e), and the possession count carried a 10-year maximum, *see id.* § 2252(b)(2). Because each count carried a statutory maximum, the probation officer calculated that the top of the range was not life, but 5,520 months (460 years). Ultimately, the probation officer recommended a 480-month sentence (40 years)—360 months for each production count served concurrently, and 120 months for possession to be served consecutively. The probation officer reasoned that whether Metzger received a sentence of 40 or 60 years, he would likely die in prison; if he received 40 years, though, he would have the hope of release and incentive to behave.

Metzger did not object to the PSR calculations. He did, however, ask for a total sentence below 20 years. He explained that as a diabetic, he had an expected life span of about 17 years, and that a 20-year sentence with good-time credit would yield roughly that amount of time. He also highlighted his Navy service, for which he was awarded three medals. Metzger acknowledged the seriousness of his crime, but observed that some aggravating factors common to sex-offense cases were absent in his, including that he had not traded child pornography and that the images did not depict sadistic or masochistic acts. Further, he argued that the concept of marginal deterrence demanded a sentence other than life in prison

so that worse offenders could receive a harsher punishment. At the sentencing hearing, Metzger and his counsel repeated these arguments, and reiterated that a sentence that would result in Metzger dying in prison was greater than necessary to achieve the goals of 18 U.S.C. § 3553(a).

At sentencing, the victims' parents testified and read letters from several of Metzger's victims. Most of the parents asked the court to sentence Metzger to life in prison or its equivalent. They also testified that, as a result of Metzger's abuse, many of the children were doing poorly in school and had strained relationships with adult men in their families; one child had contracted herpes (though the record doesn't state from whom). The government then asked for a 235-year sentence—15 years for each of the 15 counts of production to run consecutively, and 10 years for possession.

No one objected to the calculations that resulted in a 5,520-month guideline range. The district court, surprised at the possible sentence, commented that Metzger's base offense level of 47 and guideline range was the highest he had ever seen. After considering the 18 U.S.C. § 3553(a) factors, the court concluded that 5,520 months (460 years) was too much, and sentenced Metzger to 2,820 months (235 years)—15 years on each count of production and 10 years for possession all to run consecutively. When imposing the 235-year term, the court stated: "This sentence, Mr. Metzger, make no mistake, is designed so that you will be in [prison] for the rest of your life."

## II. DISCUSSION

Metzger does not dispute that his sentence is within the guideline range, and thus presumptively reasonable. *See Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Nor does he challenge the guideline calculation. Instead, Metzger advances four reasons that the sentence is unreasonable.

First, Metzger contends that a 235-year sentence, which is "just shy of eight times greater than necessary to cause Metzger's statistically likely death in prison," is overkill. 18 U.S.C. § 3553(a). He argues that the sentence is substantively unreasonable because it is significantly greater than necessary to ensure his death in prison, provide adequate deterrence, and promote respect for the law.

Metzger's sentencing range was "life," *see* U.S.S.G. § 5 Pt. A, cmt. n.2, which the guidelines themselves do not define. The Sentencing Commission's 2009 Sourcebook of Federal Sentencing Statistics equates "life" under the guidelines to 470 months, *see* SOURCEBOOK, APPENDIX A, at http://www.ussc.gov/ANNRPT/2009/appendix_A.pdf (last visited Oct. 7, 2010), but courts use this comparison only in the context of determining a starting point for departing

downward from a life sentence. *See United States v. Christensen*, 582 F.3d 860, 862 (8th Cir. 2009), *cert. denied*, 130 S. Ct. 1112 (2010); *United States v. Nelson*, 491 F.3d 344, 349-50 (7th Cir. 2007); *United States v. Keller*, 413 F.3d 706, 711 n.5 (8th Cir. 2005). On the other hand, the guidelines instruct judges in the case of multiple counts of conviction "to impose maximum and consecutive sentences to the extent necessary to make the total punishment equal in severity to what the guidelines would require were it not for the statutory maxima." *United States v. Veysey*, 334 F.3d 600, 602 (7th Cir. 2003) (citing U.S.S.G § 5G1.2(d)). That is what the district court did here. The guidelines recommended a life sentence; the judge imposed consecutive terms on each count to ensure Metzger will live out his life in prison.

Although Metzger's argument that his sentence is just too much has some intuitive appeal, no qualitative difference exists between a sentence of hundreds of years and a life sentence. We have not recognized any distinction when affirming sentences over 100 years when the defendant's guideline range was life. *See United States v. Thompson*, 523 F.3d 806, 814 (7th Cir. 2008); *Vesey*, 334 F.3d at 602; *see also United States v. Sarras*, 575 F.3d 1191, 1220-21 (11th Cir. 2009) (upholding 100-year sentence for first-time offender who sexually abused 13-year-old girl and took photos of it when guideline range was life); *United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding 750-year sentence for first-time offender who produced, received, and possessed child pornography when guideline range was life); *United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding 140-year sentence for producing and distributing child pornography when guideline range was life). Once Metzger acknowledged the validity of a life term for his crimes, his sentence for hundreds of years is not excessive.

Likewise, Metzger's 2,820-month sentence has not influenced his security designation and custody level in the Bureau of Prisons. Whether his sentence was life under the guidelines or 30 years or more, the BOP would house him in a high-level security institution. *See* BUREAU OF PRISONS, SECURITY DESIGNATION & CUSTODY CLASSIFICATION MANUAL, PROGRAM STATEMENT NO. 510008, Ch. 5, 7-13 (2006), *available at*, http://www. bop.gov/ policy/progstat/5100_008.pdf (last visited Oct. 7, 2010). Moreover, the judge recommended that Metzger be housed at a sexual offender facility at the lowest security level for which he qualifies. At argument, Metzger's counsel verified that he has been housed accordingly, and thus, his sentence for a term of years as opposed to life has not influenced his custody assignment.

Metzger next complains that the district court erroneously concluded that Metzger's age was irrelevant for sentencing purposes, and thus sentenced him to die in prison too lightly. *See United States v. Wurzinger*, 467 F.3d 649, 652 (7th Cir. 2006) ("[D]eath in prison is not to be ordered lightly, and the probability that a convict will not live out his sentence should certainly give pause to a sentencing court."). He points to the guidelines and amendments that will become effective in November that list advanced age as grounds for departure. *See* U.S.S.G. § 5H1.1; Amendments to the Sentencing Guidelines, 75 Fed. Reg. 27388 (proposed May 11,

2010) (to be codified U.S.S.G. § 5H1.1).  But Metzger misrepresents the court's decision.  The court did not state that Metzger's likelihood of dying in prison was irrelevant; the court *intended* Metzger to live out his life in prison because of the gravity of his crimes.  And, as the government points out, we have affirmed guidelines sentences for defendants that would likely result in their dying in prison.  *See, e.g., Wurzinger,* 467 F.3d at 652-53; *United States v. Bullion,* 466 F.3d 574, 576-77 (7th Cir. 2006).

Third, Metzger argues that the sentencing judge did not take his military service into account, and that even if he did, gave it too little weight.  But the court did consider his military service, noting that Metzger "had at one time in his life, conducted himself according to the law and even with distinction"—a reference to the three medals Metzger earned while in the Navy. That the judge gave Metzger's 35-year-old military service little weight is not surprising in light of the repugnant (and recent) nature of his crimes.   Furthermore, Metzger did not suggest at sentencing (nor does he now) that his military service somehow contributed to the commission of his crimes or lessened the need for punishment.  *See, e.g., United States v. Jackson*, 547 F.3d 786, 795-96 (7th Cir. 2008) (concluding that sentencing court did not have to discuss defendant's contention that he deserved lower sentence because of low IQ where he failed to explain how low IQ contributed to commission of the crime), *cert. denied,* 129 S. Ct. 1538 (2009); *United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007) (upholding district court's refusal to impose lower sentence when defendant who was molested and had low IQ failed to explain why these personal characteristics warranted leniency).

Finally, Metzger argues that his sentence is substantively unreasonable because it leaves no room for a higher penalty to deter worse offenders.  He asserts that, under the theory of marginal deterrence, "the harshest sentences should be reserved for the most culpable behavior." *United States v. Newsom*, 402 F.3d 780, 786 (7th Cir. 2005); *see United States v. Hatfield,* 591 F.3d 945, 949 (7th Cir. 2010).  But the court stated Metzger's crime was serious; that it was rare for an offense like Metzger's to go on for so long and involve so many children at such tender ages; that the guidelines provided an adjustment only up to 600 images of child pornography, which wasn't even close to the 1 million images Metzger had; that his base offense level was the highest the judge had ever seen; and that he was a "con man" and "a parent's worst nightmare."  The court was within its authority to sentence Metzger as it did.

AFFIRMED.